JOURNAL ENTRY AND OPINION
{¶ 1} Charles Barner ("Barner") appeals the trial court's decision granting summary judgment in favor of Louise Kroehle ("Kroehle"). Barner argues that the trial court erred in granting summary judgment because genuine issues of material fact remained to be litigated against Kroehle and because Kroehle failed to address Barner's invasion of privacy claim. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} Barner purchased Unit 607 at the The Hilroc Condominium ("Hilroc") located at 18501 Hilliard Boulevard in Rocky River, Ohio, in May 2002. The Hilroc Condominium Owners Association ("Association") is comprised of several officers, including a president, secretary, first vice president, treasurer, and member-at-large. Because Hilroc is a condominium, the Association is responsible for levying maintenance fees, common expenses and assessments against the unit owners.
 {¶ 3} In February 2003, after becoming concerned about the safety of his balcony, Barner stopped paying his monthly assessment fee. As a result of the unpaid assessments, Hilroc filed a certificate of lien on Barner's property, which was recorded on May 27, 2003, as instrument number 200305270085 of the Cuyahoga County Records. On June 18, 2003, Barner's mortgage company, Washington Mutual Bank, filed a foreclosure action against Barner. Hilroc intervened in the action and the matter is still pending in the Cuyahoga County Foreclosure Department.
 {¶ 4} Barner alleged that on September 8, 2003, Hilroc unit owner Joyce Bishop ("Bishop") announced her intention to nominate him to the Board of Directors for Hilroc. However, after learning of Bishop's intent, Kroehle contacted her and informed her that Barner had not paid his maintenance fees. As a result, Bishop decided not to nominate Barner to the Board of Directors at the annual meeting held September 9, 2003. Nonetheless, Marilyn Stewart nominated Barner to the Board at that same meeting. Barner declined the nomination without giving an explanation.
 {¶ 5} Barner also alleges that on July 4, 2004, Kroehle informed unit owner Carol Stringer ("Stringer") that Barner could not attend resident owner council meetings because he was a "deadbeat" and did not pay his maintenance fees. Kroehle denies ever having a conversation with Stringer concerning Barner.
 {¶ 6} Additionally, Barner claims that while sunbathing at the Hilroc pool, Kroehle approached and told him that because he did not pay his maintenance fees, he could not use the pool.
 {¶ 7} On September 8, 2004, Barner filed a complaint against Kroehle in her individual capacity as President of Hilroc Condominium Unit Owners Association.[1] Though couched in terms of a declaratory judgment action, Barner alleged that Kroehle defamed him prior to and after September 8, 2003, when she informed third parties about monies owed.[2]
 {¶ 8} On August 26, 2005, Kroehle filed a motion for summary judgment alleging that there were no genuine issues of material fact that remained to be litigated. Barner filed a memorandum in opposition, and Kroehle filed a reply brief. On December 1, 2005, the trial court issued an order granting summary judgment in favor of Kroehle. The trial court found the following:
"The court, having considered all the evidence and having construed the evidence most strongly in favor of the non-moving party, determines that reasonable minds can come to but one conclusion, that there are no genuine issues of material fact, and that Louise Kroehle in her individual and official capacity as president of Hilroc Condominium Unit Owners Association is entitled to judgment as a matter of law."
 {¶ 9} Barner appeals this order in the two assignments of error contained in the appendix to this opinion.
 {¶ 10} In his first assignment of error, Barner argues that the trial court erred in granting Kroehle's motion for summary judgment because there exist genuine issues of material fact. We disagree.
 {¶ 11} We review an appeal from summary judgment under a de novo standard of review. Baiko v. Mays (2000),140 Ohio App.3d 1, citing Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Northeast Ohio Apt.Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App. 3d 188, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and that conclusion is adverse to the nonmoving party.Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
 {¶ 12} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 292-293,1996-Ohio-107. If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 {¶ 13} Defamation is a false publication that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or affects the person adversely in his trade or business. Matalka v. Lagemann (1988),21 Ohio App.3d 134. Defamation can be in the form of either slander or libel. Slander generally refers to spoken defamatory words, while libel refers to written or printed defamatory words.Lawson v. AK Steel Corp. (1997), 121 Ohio App.3d 251. The present case deals with slander.
 {¶ 14} The elements of a defamation action, whether slander or libel, are that the defendant made a false and defamatory statement concerning another, that the false statement was published, that the plaintiff was injured, and that the defendant acted with the required degree of fault. Celebrezze v. DaytonNewspapers, Inc. (1988), 41 Ohio App.3d 343. The entry of summary judgment in a defendant's favor is appropriate in a defamation action if it appears, upon the uncontroverted facts of the record, that any one of the above critical elements of a defamation case cannot be established with convincing clarity.Temethy v. Huntington Bancshares, Inc., Cuyahoga App. No. 83291, 2004-Ohio-1253.
 {¶ 15} In Cooper School of Art v. The Plain DealerPublishing Co. (May 8, 1986), Cuyahoga App. No. 50569, this court held that a true statement cannot provide the basis for a defamation action. See, also, Driscoll v. Block (1965),3 Ohio App.2d 351. This court also stated that the statement need not be literally true in every detail. Cooper School of Art, supra. "It is sufficient to show that the imputation is substantially true, or as it is often put, to justify the `gist,' the `sting,' or the `substantial truth' of the defamation." W. Prosser, Law of Torts (4 Ed. 1971), 798-799; Cooper School of Art, supra.
 {¶ 16} In the present case, Barner alleges the following statements to be defamatory: 1) the statement made to Joyce Bishop; 2) the statement made to Barner while at the Hilroc pool; and 3) the statement made to Carol Stringer.
 {¶ 17} Specifically, Barner alleges that on September 8, 2003, Kroehle told Bishop that she should not nominate Barner to the Board of Directors because he was behind on his maintenance payments. At the time of this statement, Barner had not paid his maintenance fees since February 2003. Barner admits as much in his deposition:
"Q. So as of September 8, 2003 when this conversation occurred, you had not paid maintenance fees in several months.
A. Yes.
* * *
Q. * * * I asked you was it correct when Miss Kroehle told Miss Bishop that you had not paid your monthly maintenance fees at the time on September 8, 2003?
A. That was a partial disclosure.
Q. The answer is a yes — it is a yes or no question sir. Was it correct when Miss Kroehle told Miss Bishop that you had not paid your monthly maintenance fees on September 8, 2003?
A. Yes.
Q. In fact at that point you had not paid your maintenance fees for several months; isn't that correct?
A. Yes.
Q. And at that time a lien had already been filed on your property?
A. Yes.
Barner Deposition at 18, 47-48.
 {¶ 18} Based on the evidence above, we find that Kroehle made a true statement to Bishop concerning Barner's failure to pay his maintenance fees. Barner argues that because Kroehle did not elaborate and inform Bishop that he was withholding his maintenance fees as a result of a dispute concerning his balcony, she defamed him. As stated above, that is not required by the law. Cooper School of Art, supra. Because we find that Kroehle made a true statement to Bishop, this statement cannot provide a basis for Barner's defamation action. Id.; Temethy, supra.
 {¶ 19} Barner also alleges that while he was sunbathing at the Hilroc pool, Kroehle approached and told him that he could not use the pool because he had not paid his maintenance fees. This statement is also not actionable as it is true. The Hilroc Condominium Unit Owners Association Rules and Regulations Handbook states in the collection policy enacted on October 11, 2001: "Pool passes will not be issued to any account which is delinquent in payment of assessments, including maintenance fees, and will be revoked if the account becomes delinquent."
 {¶ 20} Barner again argues that because he was disputing the fees as part of his concern for the safety of his balcony, Kroehle's statement constituted defamation. However, the Rules and Regulations clearly state that any individual who is delinquent cannot use the pool facility; the rules do not provide an exception for individuals disputing their maintenance fees. Moreover, Barner's deposition testimony cited above reveals that it was undisputed that he had not paid his maintenance fees. Accordingly, Kroehle made a true statement to Barner while he was sunbathing at the Hilroc pool. As such, this statement cannot be used to support a claim for defamation. Cooper School of Art,
supra; Temethy, supra.
 {¶ 21} Kroehle provides additional arguments as to why her statements to Bishop and Barner are not defamatory. However, because we have concluded that they are true statements, and that Barner cannot support a claim for defamation based on these two statements, we will not address her additional arguments.
 {¶ 22} We are left with Barner's claim that Kroehle defamed him when she called him a deadbeat in front of Carol Stringer. Specifically, Barner alleges that on July 4, 2004, Kroehle told Stringer that "deadbeat Barner" had no right to attend Board of Directors meetings since he was in arrears and how furious she was to have seen his name in the minutes of the November 3, 2003 meeting. Kroehle categorically denies ever saying anything to Stringer about Barner. Nonetheless, we must view the evidence most strongly in favor of Barner and, therefore, we will analyze this statement as if it were admitted to by Kroehle. Temple,
supra.
 {¶ 23} Under Ohio law, for a statement to be defamatory, it must be a statement of fact and not of opinion. Vail v. ThePlain Dealer Publishing Co., 72 Ohio St.3d 279, 1995-Ohio-187. Section 11, Article I, of the Ohio Constitution provides in relevant part: "every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."
 {¶ 24} Whether an allegedly defamatory statement is an opinion or fact is a question of law for this court to decide.Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369. A "totality of the circumstances" test is used to determine whether a statement is fact or opinion. Vail, supra. This is a fluid test and calls for the court to consider the specific language used, whether the statement is verifiable, the general context of the statement and the broader context in which the statement appeared. Id.
 {¶ 25} In the present case, the specific language used is unambiguous. Kroehle called Barner a deadbeat for failing to pay his maintenance fees and stated that he should not be allowed to attend Board meetings. As to whether this statement is verifiable, we have previously determined that Barner had not paid his maintenance fees at the time of this statement. Barner does not take issue with this portion of the statement; he argues that Kroehle's claim that he could not attend Board meetings and the words "deadbeat Barner" constitute the defamatory portion of the phrase. However, when making the statement, Kroehle did not imply that she had any additional knowledge to support this declaration, outside of the public knowledge that Barner had not paid his maintenance bill.
 {¶ 26} Additionally, in the context in which this statement was made makes the entire statement appear to be gossip, rather than fact. In a broader social context, the remarks are more similar to water-cooler chitchat than they are to a formal statement of fact that took place during a Hilroc Board of Directors meeting.
 {¶ 27} Based on the totality of the circumstances, Kroehle's statement to Stringer is nondefamatory opinion as a matter of law. As such, it cannot be the basis for Barner's defamation claim.
 {¶ 28} Because we have concluded that all three statements relied upon by Barner to support his claim for defamation were either true or constitutionally protected opinion, Barner's claims for defamation fail as a matter of law. Therefore, we must affirm the trial court's grant of summary judgment in favor of Kroehle as no genuine issue of material fact exists.
 {¶ 29} Barner's first assignment of error is overruled.
 {¶ 30} In his second assignment of error, Barner argues that the trial court erred in dismissing his claim for invasion of privacy because Kroehle failed to address this claim in her motion for summary judgment. We disagree.
 {¶ 31} A review of Barner's complaint reveals that he alleged two causes of action, both of which were for defamation. Barner never alleged a cause of action for invasion of privacy.
 {¶ 32} Nonetheless, this court will address Barner's claim of invasion of privacy. Though not specifically raised in Kroehle's motion for summary judgment, we conclude from a de novo review of the facts of the record, that no genuine issue of material fact remains to be litigated on Barner's invasion of privacy claim.
 {¶ 33} Invasion of privacy, as it is recognized in Ohio, is defined in the second syllabus of Housh v. Peth (1956), 165 Ohio St. 35, as follows:
"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."
 {¶ 34} In Ohio, the tort of invasion of privacy is divided into four separate torts: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163. The present case involves the second category, which is known as the "publicity or disclosure tort." Scroggins v. Bill Furst Florist and Greenhouse Inc., etal., Montgomery App. No. 19519, 2004-Ohio-79. The elements of this tort are:
"(1) There must be publicity; the disclosure must be of a public nature, not private. `Publicity' means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to `publication' as a term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person.
(2) The facts disclosed must be those concerning the private life of an individual, not his public life. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public, such as matters of public record about his birth or marriage date, or matters that the plaintiff leaves open to the public eye, such as kissing his spouse in public.
(3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person or ordinary sensibilities.
(4) The publication must have been made intentionally, not negligently.
(5) The matter publicized must not be a legitimate concern to the public. A newspaper's publicizing `legitimate news' ordinarily will not be actionable." Scroggins, supra.
 {¶ 35} In the present case, Barner cannot establish the existence of any genuine issue of material fact. First, Kroehle's disclosure of Barner's nonpayment of his maintenance fees is not a private matter. Anthony Stringer, president of The Hilroc Board of Directors at the time of this lawsuit, stated in his deposition that the information concerning who has or has not paid their maintenance fees was available to all owners of units in Hilroc. Mr. Stringer reported that the Board of Director's Bylaws provide for such information to be available to the owners.
 {¶ 36} Additionally, Barner informed two residents that he had not paid his maintenance fees because he was disputing the safety of his balcony. Barner's own disclosure of this nonpayment undermines any claim that Kroehle's disclosure of the same information was "highly offensive" and "objectionable to a reasonable person or ordinary sensibilities."
 {¶ 37} After viewing the evidence in the light most favorable to Barner, we conclude that Barner's claim of invasion of privacy must fail as a matter of law. Accordingly, the trial court did not err in granting summary judgment in favor of Kroehle.
 {¶ 38} Barner's second assignment of error is overruled.
 {¶ 39} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Calabrese Jr., J., concur
 APPENDIX Assignments of Error "I. The trial court erred in granting appellee's motion forsummary judgment as to appellant's defamation because there existgenuine issues of material fact which as a matter of law precludesummary judgment.
 II. The trial court erred in granting appellee's motion forsummary judgment as to appellant's invasion of privacy claim."
[1] At the time of the lawsuit, Kroehle was no longer the president of The Hilroc Board of Directors, she was solely a member.
[2] Although the language Barner used in his complaint indicated that he sought a declaratory judgment, the fact that Barner identified his causes of action as defamation controls.